UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EMMANUEL GUTIERREZ GOMEZ,

Petitioner,

v.

TODD M. LYONS, et al.,

Respondents.

Case No.  1:26-cv-00635-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENTS' MOTION TO DISMISS

(Doc. 13)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART[1]

(Doc. 1)

FIVE-DAY OBJECTION PERIOD

Petitioner Emmanuel Gutierrez Gomez, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Detention Facility in California City, California, initiated this action by filing, with counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on January 26, 2026.  (Doc. 1, "Petition").  On January 27, 2026, Petitioner filed a motion for temporary restraining order.  (Doc. 5).  On January 28, 2026,

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

the assigned district judge denied Petitioner's motion for a temporary restraining order as untimely, referred the matter to the undersigned magistrate judge for a determination on the merits, and set a briefing schedule. (Doc. 7). On January 30, 2026, Petitioner filed a renewed request for a temporary restraining order, which was again denied on February 2, 2026. (Docs. 10, 12).

The Petition raises the following claims for relief: (1) Petitioner is not subject to mandatory detention under Immigration and Naturalization Act ("INA") § 235; (2) Petitioner was unlawfully arrested and detained in violation of his due process rights under the Fifth Amendment; and (3) Petitioner is a *Maldonado Bautista* class member and therefore not subject to mandatory detention. (Doc. 1 at 2, 6); *see Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). As relief, Petitioner seeks immediate release from custody. (*Id*. at 7).

On February 24, 2026, Respondents filed a Motion to Dismiss ("Motion") submitting the now-familiar boilerplate argument that the Court should deny the Petition because (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission," and is therefore ineligible for a bond hearing; and (2) Petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress."[2] (Doc. 13 at 2). Respondents additionally argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) while his removal proceedings are pending due to his 2015 criminal convictions. (Doc. 13 at 2). In reply, Petitioner argues (1) an overwhelming majority of courts have rejected Respondents' "new statutory interpretation" that noncitizens, like Petitioner, who previously entered the country and have resided here prior to being apprehended and placed in

---

[2] The response also includes a footnote outlining district court cases within the Ninth Circuit that have recently vacated or stayed the Department of Homeland Security's July 8, 2025 *Interim Guidance Regarding Detention Authority for Applications for Admission*, and appeals regarding the application of § 1225(b)(2) and "the question of due process in the context of re-detention" that are currently pending before the Ninth Circuit. (Doc. 14 at 1, n1 (*citing, e.g., Maldonado Bautista v. Noem*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025); *Garro Pinchi v. Noem*, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025); *Rodriguez v. Bostock*, No. 25-6842 (9th Cir.); *Benavides Carballo v. Andrews*, No. 25-6533 (9th Cir.)). However, Respondents do not identify the relevance of these cases for the Court's consideration of the instant matter, nor does the instant Petition assert any claims relying on these cases aside from *Maldonado*, discussed *supra*.

2

removal proceedings under 8 U.S.C. § 1225(b)(2), as opposed to § 1226(a), and (2) Respondents incorrectly argue that Petitioner is subject to mandatory detention under § 1226(c) because of the recently enacted Laken Riley Act, which "lacks any specific language that would make it apply retroactively to a person like Petitioner." (Doc. 14).  On March 30, 2026, the Court directed Respondent to file supplemental briefing addressing the precise statutory authority under with Petitioner is subject to mandatory detention, and to identify the applicable sub-section of § 1226(c)(1) and "how Petitioner's 2015 criminal convictions qualify him as subject to mandatory detention under that subsection." (Doc. 15).  Respondents submitted supplemental briefing on April 6, 2026, and Petitioner filed a response to the supplement on April 7, 2026.  (Docs. 16, 17).

Significant to the consideration of the Petition is Petitioner's status as a Mexican citizen who entered the country without inspection or parole and resided in the United States for 20 years before being apprehended and placed in standard removal proceedings under § 1229a.  The undersigned recommends the district court deny Respondents' Motion to Dismiss and grant the Petition in part for the reasons set forth below.[3]

## I.    BACKGROUND

It is uncontested that Petitioner is a native of Peru and a citizen of Mexico who entered the United States without inspection on or around 2005.  (Doc. 1 at 6; Doc. 13 at 11).  He has resided in the United States since his entry in 2005, and was living in Stockton, California at the time was taken into custody.  (Doc. 1 at 6; Doc. 13 at 6).  Petitioner has a criminal history – to wit –2015 convictions in Santa Clara County Superior Court on two counts of transportation for the sale of controlled substances in violation of section 11352(A) of the California Health and Safety Code (HS), and two counts of transportation for the sale of methamphetamine in violation of HS 11329(A), for which he was sentenced to a total term of 18 years imprisonment.  (Doc. 13 at 16-49).

After Petitioner was released on an unknown date, he filed an asylum application with

---

[3] In light of the Court's conclusion that Petitioner's detention is in violation of the INA and recommendation that Respondent provide Petitioner with a hearing to determine to what extent he is subject to detention under § 1226, the Court declines to address Petitioner's due process claim.

U.S. Citizenship and Immigration Services ("USCIS") at some point between December 2023 and January 2024. (*Id*. at 52). On December 4, 2025, Petitioner was arrested by ERO in a field operation at his last known address. (*Id*.; Doc. 13 at 6). On the same date, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging Petitioner as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and ordering Petitioner to appear before an IJ. (Doc. 13 at 11-12). Petitioner is currently detained in ICE custody at the California City Detention Center in California City, California. (Doc. 1 at 1).

## II.    APPLICABLE LAW AND ANALYSIS

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### A.  Statutory and Legal Framework

As relevant here, the Court will briefly outline the relevant statutory and legal framework of detention authority under the INA.

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). Pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer

4

determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole. § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional bond hearing if he or she can demonstrate a material change in circumstances. *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289

(emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of aliens ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA without inspection and were apprehended while present in the U.S.  By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while residing in the United States, as subject to Section 1226(a).").  However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American

6

Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

**B.  Analysis**

First, as to Petitioner's claim for relief as a purported *Maldonado Bautista* class member, the Court notes that subsequent to the filing of the Petition and response, the Ninth Circuit limited application of the class in *Maldonado Bautista* to the Central District of California and temporarily stayed its application to all other potential class members.  *See Maldonado Bautista v. U.S. Dep't of Homeland Sec.*, No. 26-1044 (9th Cir. Mar. 6, 2026).  Thus, Petitioner's only avenue for relief on this claim is in the Central District of California.  Moreover, notwithstanding the Ninth Circuit stay, this Court previously expressed concerns about the binding nature, or lack thereof, of the *Maldonado Bautista* directives in the context of Petitioner's request for relief in the form a petition for writ of habeas corpus, and found it unnecessary to decide whether Petitioner is entitled to relief solely based on his purported membership in the *Maldonado Bautista* class. *See Gurrola v. Cruz*, Case No. 1:25-cv-02078-JLT-HBK, 2026 WL 494478, at *5-6 (E.D. Cal. Feb. 20, 2026), *report and recommendation adopted by Herredia Gurrola v. Cruz*, 2026 WL 622124 (E.D. Cal. Mar. 5, 2026) (citing *Justo S. v. Cruz*, 2026 WL 457120, at *1 (E.D. Cal. Feb. 18, 2026) (adopting findings and recommendations in part, and noting the court "declines to address whether Petitioner is entitled to relief in this habeas petition simply because he is a *Maldonado Bautista* class member."); and *Ramirez v. Holt*, 2026 WL 226964, at *7 (E.D. Ky. Jan. 28, 2026) (citing *Maldonado Bautista v. Santacruz*, 2025 WL 3713987, at *30 (C.D. Cal. Dec. 18, 2025) (finding *Maldonado Bautista* can have no more than persuasive authority, and noting the court acknowledged that "[t]o the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be

*ultra vires*; there is no habeas jurisdiction to do so.")).  Rather, the Court will directly address Petitioner's allegation that mandatory detention of Petitioner, as a noncitizen who previously entered the country and has resided here prior to being apprehended and placed in removal proceedings under 8 U.S.C. § 1225(b)(2), instead of § 1226, is a violation of the INA.  The Court agrees with Petitioner for the reasons discussed briefly below, as they have been exhaustively considered by district courts across the country.

This Court's analysis is primarily guided by principles of statutory interpretation.  The plain language of the statute is the starting point for its interpretation.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989).  Fundamentally, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  *Sandifer v. United States Steel Corp.*, 571 U.S. 200, 227 (2014) (citation omitted).  But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'"  *King v. Burwell*, 576 U.S. 473, 486 (2105).  Moreover, it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Corley v. United States*, 556 U.S. 303, 314 (2009).  Relevant here, the Supreme Court recently stated that courts "must exercise independent judgment in determining the meaning of statutory provisions," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 412 (2024).

Courts considering the plain language of this statute have consistently found that the phrase "seeking admission" necessarily entails some type of present action taken to obtain entry.  *See, e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489-90 (S.D.N.Y. 2025) ("This understanding accords with the plain, ordinary meaning of the words 'seeking' and 'admission.'  For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if

8

that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there."); *Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044, at *8 (2nd Cir. Apr. 28, 2026) ("When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission right now, not one who sought admission in the past but no longer is."); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *but see Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *4 (5th Circ. Feb. 6, 2026) ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila v. Bondi*, ---F.4th---, 2026 WL 819258 (8th Cir. Mar. 25, 2026).  The Court is persuaded by this analysis.  Petitioner has resided in the United States for more than 20 years prior to his arrest and detention without seeking admission; thus, the mandatory detention provision of § 1225(b)(2)(A) does not apply to Petitioner regardless of whether he is properly defined as an "applicant for admission."

Moreover, Respondents' proposed interpretation also disregards the relationship within the INA between § 1225 and § 1226.  First, § 1225 governs "inspection" of "arriving aliens," while § 1226 focuses on the "apprehension and detention of aliens."  The interplay between these provisions was summarized by the Supreme Court in *Jennings* as follows: "[t]o implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. … In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 286-89, *see also id*. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for

their arrest and detention pending removal proceedings."); *Romero v. Hyde*, 2025 WL 2403827, at *12-13 (D. Mass. Aug. 19, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting the distinction between "persons inside the United States and persons outside the United States" "is consistent with the long history of our immigration laws and with the Constitution.").  Thus, Petitioner is more aptly characterized as an alien "already in the country," albeit without legal status, and should therefore be detained under § 1226(a).

Second, as described above, the 2025 amendment to § 1226(c) under the Laken Riley Act, added subsection § 1226(c)(1)(E) to require mandatory detention for those inadmissible under §§ 1182(a)(6)(A) (aliens present in the United States without being admitted or paroled, like Petitioner), (6)(C), or (7) *and* charged with, arrested for, convicted of, or admitting to certain crimes. § 1226(c)(1)(E).  If, as Respondents claim, all "applicants for admission," including those already present in the country and then deemed inadmissible, are already subject to mandatory detention under § 1225(b)(2), it would be unnecessary to pass an amendment requiring mandatory detention for those applicants who were also charged with certain crimes.  *See, e.g., Escobar Salgado*, 2025 WL 3205356, at *13.  "Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."  *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Based on the foregoing, giving effect to every word in § 1225(b)(2)(A) in accordance with their ordinary meaning, and considered in context with § 1226 and the overall statutory scheme, Respondents' new statutory interpretation of § 1225(b)(2), and the application of § 1225(b)(2)(A) to Petitioner, is in violation of the INA.  "Legislative history, congressional intent, and historical context is relevant to confirm textual analysis."  *See Escobar Salgado*, 2025 WL 3205356, at *11 (citing *Biden v. Texas*, 597 U.S. 785, 804 (2022)); *see also Loper Bright*, 603 U.S. at 386 (2024) ("The longstanding practice of the government – like any other interpretive aid – can inform [a

10

court's] determination of what the law is.") (internal quotations omitted).  To the extent not discussed *supra*, in the interests of efficiency, the Court relies on the analysis of these factors by numerous district courts as further support that uninspected aliens residing long term in the United States without seeking admission, like Petitioner, are subject to detention under § 1226, and mandatory detention of those individuals under § 1225(b)(2)(A) as recently interpreted by Respondent, is unlawful.  *See, e.g., id*. at *17-20; *Maldonado*, 795 F. Supp. 3d at 1150; *Salcedo Aceros*, 2025 WL 2637503, at *11-12; *Gomez v. Doe*, 2025 WL 3269886, at * (D. Ariz. Nov. 3, 2025) (collecting cases).

Finally, while not binding on this Court, it is noteworthy that district courts considering this issue across the country, including in the Eastern District of California, have consistently rejected Respondents' argument that all noncitizens who entered the United States without inspection and have lived in the United States for years or decades are "applicants for admission" subject to mandatory detention under § 1225(b)(2); instead, that category of noncitizen is subject to detention under § 1226.[4] *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *Aquino v. LaRose*, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *8, n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Echevarria v.  Bondi*, 2025 WL 2821282, at *7 (D. Ariz. Oct. 3, 2025) (collecting cases); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the

---

[4] The Ninth Circuit has not yet addressed this issue; and there is a split among the three Circuit Courts that have issued decisions.  *See Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044 (2nd Cir. Apr. 28, 2026); *but see Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, ---F.4th---, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

United States. Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (§ 1225(b)(2)(A) applies to an alien who is physically present in the United Sates but not lawfully admitted, regardless of how long they have been physically present here.").

For all of these reasons, the Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A); rather, his detention is governed by the framework of § 1226. *Jennings*, 583 U.S. at 303 ("§ 1226 applies to aliens already present in the United States."). However, that determination does not resolve the instant Petition.

Respondents argue, in the alternative, that Petitioner is subject to mandatory detention pursuant to § 1226(c) due to his 2015 California convictions on two counts of transportation for the sale of controlled substances in violation of HS § 11352(a) and two counts of transportation for the sale of methamphetamine in violation of HS § 11329(a). (Doc. 13 at 2). As discussed *supra*, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," thereby mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original). Yet despite a direct order from this Court requiring Respondents to explain "how Petitioner's 2015 criminal convictions qualify him as subject to mandatory detention" (Doc. 15), Respondents' supplemental submission added three sentences to their previous argument as to § 1226(c) as follows:

> Section 1226(c)(1)(A) of Title 8 states that "the Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." Furthermore, section 1182(a)(2)(A)(i)(II) of Title 8 states "any alien convicted of or admits having committed or who admits committing acts which constitute the essential elements of a violation of…any law or regulation of a state, the United States, or a foreign

> country relating to controlled substance (as defined in section 802 of title 21) is inadmissible." Here, as mentioned above, Petitioner was convicted of several counts of controlled substances offenses and as such, section 1226(c)(1)(A) applies and subjects Petitioner to mandatory detention.

(Doc. 16 at 2; *see also* Doc. 16 at 4-37 (attaching, *inter alia*, redacted felony complaint summary, felony complaint, amended felony complaint, and abstract of judgment from petitioner's state court proceedings)).  This cursory "argument" is unavailing and falls well short of what is required. [5]  Aside from identifying and providing the full text of what Respondents believe to be the applicable sub-sections of § 1226(c)(1)(A) and 8 U.S.C. § 1182(a)(2)(A)(i)(II), Respondents fail to offer any meaningful evidence, argument, or specific legal authority regarding how Petitioner's 2015 state criminal convictions "relate to" to a controlled substance such that it triggers mandatory detention under § 1226(c)(1)(A), nor does Respondent address the circumstances of Petitioner's release from detention and any gap between that release and his re-detention.  *See e.g.*, *Bucio Rosales v. Warden of the Golden State Annex Detention Facility*, 2026 WL 1030955 (E.D Cal. Apr. 16, 2026) (analyzing Ninth Circuit law to determine whether petitioner is inadmissible under § 1182(a)(2), and therefore subject to mandatory detention under § 1226(c)(1)(A), due to convictions in violation of specific California state laws for possession of controlled substances).

---

[5] The undersigned notes with increasing concern Respondents' continued failure to address the circumstances of each individual petitioner seeking habeas relief, including any prior detention and/or release and the specific statutory authority purportedly justifying current detention. The Court is mindful of the substantial burdens imposed on all parties by the volume of habeas petitions presently before it.  Those burdens, however, do not excuse Respondents from their obligation to provide individualized, legally sufficient responses. Habeas review is inherently individualized and depends upon a developed record tailored to each petitioner. Submissions that rely on generalized or boilerplate assertions, rather than specific facts, do more than inconvenience the Court, they materially hinder its ability to discharge its constitutional function. Absent a meaningful account of the basis for each petitioner's detention, the Court cannot adjudicate with confidence the accuracy of its determinations.

Of equal concern is the consequence of these deficiencies: the risk that, in the absence of necessary individualized information, the Court may be compelled to resolve cases in an undifferentiated manner. That risk is neither theoretical nor without potential serious consequence. A generalized approach is incompatible with the role of the writ and with Respondents' duty to act as servants of the law and to ensure that justice is done. Respondents are reminded that their role is not merely to oppose relief, but to assist the Court in reaching legally sound determinations based on complete and accurate records. The present course of submission falls short of that obligation.

In short, the undersigned finds Respondents have failed to carry their burden of demonstrating that Petitioner is subject to mandatory detention pursuant to § 1226(c).  That said, Petitioner's criminal history is not insignificant.  Thus, the undersigned recommends granting the Petition only in part as to Petitioner's claim that he is unlawfully detained under § 1225(b)(2), and ordering Respondents to provide a hearing under § 1226 such that the IJ may properly consider whether Petitioner is subject to mandatory detention under § 1226(c) or discretionary detention under § 1226(a), and in that case may consider Petitioner's dangerousness and flight risk on an individualized basis on a developed record.  *See Rodriguez Castro v. Larose*, 2026 WL 821058, at *2 (S.D. Cal. Mar. 25, 2026); *Calel Cumes v. Moniz*, 2025 WL 3197637, at *2 (D. Mass. Oct. 6, 2025) ("The Court leaves the question of whether Petitioner's criminal conviction triggers mandatory detention under § 1226(c) to the immigration judge to address in the first instance.").

Accordingly, it is hereby **RECOMMENDED:**

1.  Respondents' Motion to Dismiss (Doc. 13) be DENIED.

2.  The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED IN PART.

It is **further RECOMMENDED**:

1.  If the district court adopts these Findings and Recommendations, the district court direct that within seven (7) days of its Order, Respondents be directed to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226 at which the Immigration Judge may consider whether Petitioner is subject to mandatory detention under § 1226(c) or discretionary detention under § 1226(a).

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the urgency of a grant of the Petition, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to

refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    May 6, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

15